**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 11-20745-CR-UNGARO/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARLINGTON NEVARDO LEWIS,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION
TO SUPPRESS STATEMENT AND
ORDER ON DEFENDANT'S REQUEST FOR EVIDENTIARY HEARING**

This matter is before the Court on Defendant Carlington Nevardo Lewis' ("Defendant") Motion to Suppress Statement and Request for Evidentiary Hearing [D.E. 87] and the Government's Opposition thereto [D.E. 103].[1] The Honorable Ursula Ungaro referred this matter to the undersigned Magistrate Judge [D.E. 126] which is ripe for adjudication.

---

[1] The government filed two exhibits with its Response. Exhibit B is a transcript of the January 24, 2012 police interrogation of Defendant that resulted in the post-arrest statements that Defendant now wishes to suppress. [D.E. 103-2]. Exhibit A is a copy of the "Advice of Rights and Waiver" form that Defendant signed during the interrogation. [D.E. 103-1]. Exhibit C, which the government references in its opposition brief at page 13, is a compact disc featuring an audio recording of a police interview with Defendant that was conducted on January 9, 2009 in an unrelated case. The compact disc was hand-delivered to the undersigned's Chambers and will be filed with the Clerk of Court. Defendant did not file a Reply and has not objected to the Court's consideration of the aforementioned exhibits. Accordingly, we will accept them as accurate and consider them when analyzing Defendant's claim here.

We have carefully considered the motion and response, the exhibits provided by the government, the record in this case, and are otherwise fully advised in the premises. We find that Defendant's post-arrest statements were the product of a voluntary, knowing, and intelligent waiver of his *Miranda* rights. Accordingly, we recommend that his motion to suppress those statements be Denied. Because Defendant has failed to raise any issue of fact that could affect our determination on the voluntariness of his statements, we Deny his request for an evidentiary hearing.

## I.   *BACKGROUND*

On January 24, 2012, Defendant was arrested pursuant to a federal warrant for his alleged involvement in a plot to kill a confidential informant ("CI") in order to prevent the CI from testifying at the trial of his brother, Danny Lewis (also a co-Defendant in this case), on firearms-related charges. [D.E. 3 at 2-11 (Criminal Complaint and Affidavit); *see also* D.E. 54 (Second Superceding Indictment)].

Defendant was taken to the City of Miami Gardens Police Department ("PD") where his interrogation was audio-visually recorded. [D.E. 103-2 (Transcript of Defendant's Interview)]. Defendant was asked some preliminary questions by Special Agent Javier Ribas of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and Detective Michael Horn of the Miami Gardens PD. After ascertaining that Defendant was not impaired by medication, drugs, or alcohol, SA Ribas showed him an ATF "Advice of Rights and Waiver" form. [D.E. 103-1]. At Defendant's request, SA

Ribas read the form aloud to him and the following dialogue between Defendant and the agents occurred:[2]

>  JR:   Okay. Before we can start talking to you, you have certain rights afforded to you, and these are the rights. I'm going to read them to you. You said you can read and write, right?
>
>  CL:   Yes.
>
>  JR:   Okay. You can read it out yourself. It's up to you. Pretty much you have your basic rights. You want to read them or you want me read it to you? Okay.
>
>  CL:   You.
>
>  JR:   All right. You have the right to remain silent, okay. Anything you say can be used against you in court. You have the right to talk to a lawyer before me asking you any questions (unintelligible).[3] If you cannot afford a lawyer, one will be appointed for you if you wish before any question begins. If you decide to answer any questions now without a lawyer present, you will have the right to stop at any time. Do you understand that?
>
>  CL:   Yes.
>
>  JR:   Okay. Just go ahead and initial next to each one of these. Okay? This is very important, okay? This is a waiver. I read the statement of my rights or it has been read to me, as we discussed. I understand these rights and at this time I am willing to answer questions without a lawyer present. No promise or threats have been made to me and no pressures

---

[2] The initials "JR" refer to SA Ribas; "CL" to Defendant Carlington Lewis; and "TH" to Detective Horn.

[3] The transcript reflects that the court reporter was unable to decipher something SA Ribas said. [*See* D.E. 103-2 at 5]. At the time, the agent was reading Defendant his *Miranda* rights directly from the ATF rights form and was in the middle of reading the third sentence in the "Section of Rights" section of the form. Accordingly, it is likely that what the court reporter marked as "unintelligible" in the transcript is the rest of the third sentence, which reads in its entirety: "You have the right to talk to a lawyer before we ask you any questions *and to have a lawyer with you during questioning.*" [D.E. 103-1 (emphasis supplied as to the missing portion)].

Case 1:11-cr-20745-UU   Document 115   Entered on FLSD Docket 10/04/2012   Page 4 of 16

>
> or force of any kind has been used against me. You understand? Are you willing to talk to us?
>
> CL: You said a lawyer will be appointed for me or I have to pay for a lawyer?
>
> JR: The constitution affords you to have an attorney present. It could be now or later or whatever is going on, but I cannot talk to you about your case until you sign this form.
>
> JR: It's up to you whatever you want to talk about.
>
> CL: You got a lawyer present?
>
> JR: No.
>
> TH: No, we don't have a lawyer. You've been arrested before? You know people who've been arrested, right? Basically you either -- you talk to us now without a lawyer, or you go to jail and you deal with it on your own. This is your one opportunity.
>
> JR: To talk to us. After that –
>
> TH: It's on you. It's your decision. We're no forcing anything.
>
> JR: We're not forcing you. We just can't talk to you. These are the rights afforded to you.
>
> TH: We can't get you a lawyer present now basically.
>
> CL: I don't even know what's going on, man.
>
> JR: Just print your name right here for me. All right, Carlington. I know you by the name -- I know you by the name of Nev, all right? That's why I asked you before if you have any other names. So am I safe to assume that you are Nev or no?
>
> CL: My name is Carlington Nevardo Lewis.

[D.E. 103-2 at 5-6].

As indicated by the transcript, Defendant placed his initials beside each of the rights listed in the "Statement of Rights" section of the form. [D.E. 103-1]. He also

signed and printed his name below the "Waiver" section of the form. [*Id.*]. Defendant then gave a statement to the agents. Defendant did not ask for a lawyer nor did he request at any point that questioning cease.

## II.   ANALYSIS

Defendant moves to suppress his post-arrest statements. He claims that the agents' responses to his questions about his constitutional rights – to counsel, to have counsel appointed before any questioning, and the consequences and effect of a waiver of those rights – were misleading, confusing, and deceptive. He further contends that the agents' responses had a "coercive effect" in that they implied a promise that he would go to jail should he not waive his rights and speak with them. Consequently, Defendant contends that he was confused about his rights, his waiver was not knowing and voluntary, and his statements should be suppressed. He also requests an evidentiary hearing on this issue.

### A.   *Suppression of Statements*

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court established various prophylactic measures designed to safeguard the Fifth Amendment privilege against self-incrimination during custodial interrogations. Specifically, to protect a suspect's Fifth Amendment right against making incriminating statements, the suspect must be warned prior to custodial interrogation that he has the right to remain silent and the right to have an attorney with him during questioning. *Id.* at 478-79; *see also Edwards v. Arizona*, 451 U.S. 477, 481-82 (1981).

*Miranda* and its progeny do not hold, however, that these rights cannot be waived. *See, e.g., McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991). On the contrary, *Miranda* recognized that statements elicited during custodial interrogation are admissible if the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.* (quoting *Miranda*, 384 U.S. at 475); *see also Moran v. Burbine,* 475 U.S. 412 (1986) (waiver must be "made voluntarily, knowingly and intelligently[;]" quoting *Miranda*, 384 U.S. at 482). Whether a waiver has occurred depends "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Edwards*, 451 U.S. at 482 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

In *Moran*, the Supreme Court explained that the inquiry into the validity of a *Miranda* waiver has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

475 U.S. at 421 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). The government bears the burden of proving a valid waiver by a preponderance of evidence. *Colorado v. Connelly,* 479 U.S. 157, 168 (1986).

We see nothing in the record before us to suggest that Defendant's waiver was not the product of a free and deliberate choice and was not made with a full awareness of the nature of the rights he was abandoning and the consequences of his decision.

Turning first to the knowledge prong of the *Moran* inquiry, each of the *Miranda* rights was clearly articulated to Defendant.  He was told he had the right to remain silent and anything he said could be used against him in court; he had the right to talk with a lawyer before any questioning began and to have a lawyer with him during questioning; he had the right to have counsel appointed for him if he could not afford a lawyer, prior to any questioning; and he had the right to end questioning at any time notwithstanding his decision to answer some questions outside the presence of a lawyer.  Defendant acknowledged that he understood these rights orally and in writing.

The waiver language was then read to him, and he signed that section as well. Although Defendant had a brief discussion with the agents before signing, he did so without voicing any confusion about his rights or what a waiver meant.  Thus, Defendant again indicated that he understood his rights, and he signaled his willingness to voluntarily abandon them and speak to the agents without a lawyer.

An objective reading of the transcript simply does not support Defendant's conclusory allegations that the agents deceived, mislead, confused, and coerced him during the brief discussion.  Instead, it supports our determination that Defendant was fully aware of his rights and of the consequences of abandoning them.

First, before the discussion, Defendant orally and in writing indicated that he understood each of the rights that had just been conveyed to him.

Second, by asking whether a lawyer would be appointed for him or whether he would have to pay for a lawyer, Defendant demonstrated his awareness of the right to counsel. The query concerned the mechanics of hiring and paying for a lawyer, not whether he had a right to a lawyer in the first place.

The agents did not respond directly to the question, instead informing Defendant that he was entitled to have an attorney present and that they could not speak with him about the case until he waived his rights. This is a correct statement of the law; there was nothing misleading about that. Moreover, the agents appropriately did not respond directly to the question. Whether a defendant is entitled to court-appointed counsel requires an inquiry into the individual's financial situation and is a decision made by a judge, not law enforcement agents.

The agents also informed Defendant that they could not provide him with a lawyer at that time, that this was his one opportunity to talk with them, that it was his choice, and that if he decided not to talk with them, he would be returned to jail and have to deal with "it" on his own. There was nothing inherently inaccurate or misleading about any of those statements, either. The fact of the matter is, Defendant was under arrest; if he elected not to speak with the agents, he would be sent to a cell to await an appearance in court.

Third, part-way through the interrogation, one of the agents reminded Defendant that a lawyer would be appointed for him. [D.E. 103-2 at 28]. Defendant did not seek clarification or express confusion at that time.

Fourth, Defendant never once asked for a lawyer, never said that he was not willing to talk with the agents, and never attempted to terminate the interview.

Fifth, at the time Defendant talked to these agents, he was already familiar with the *Miranda* protections. In January 2009, Defendant was interviewed in connection with an unrelated criminal matter. He was advised of his *Miranda* rights, calmly indicated that he understood those rights, waived them verbally and in writing, and answered the interviewing officer's questions. [*See* Ex. C to Government's Response Opposing Defendant's Motion to Suppress Statements and Request for Evidentiary Hearing [D.E. 103] (Audio Recording of January 9, 2009 Police Interview)]. Prior experience with police interrogation tactics and the criminal justice system make it less likely that Defendant was confused about his rights this time around.

Finally, the record shows that Defendant was not under the influence of any substance that might have affected his ability to understand what was occurring at the police station. He is a high school graduate who reads and writes and, based on our reading of the transcript, ably and articulately responded to the agents' questions.

Significantly, Defendant has not alleged that he was confused about his right to remain silent or the fact that anything he said could be used against him, the essence of the Fifth Amendment privilege against self-incrimination. As the Court explained in *Colorado v. Spring*, 479 U.S. 564 (1987), the Constitution does not require that a defendant know and understand every possible consequence of a waiver of the Fifth Amendment privilege. Instead, the Court stated,

> [t]he Fifth Amendment's guarantee is both simpler and more fundamental: A defendant may not be compelled to be a witness against himself in any respect. The *Miranda* warnings protect this privilege by

> ensuring that a suspect knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time. The *Miranda* warnings ensure that a waiver of these rights is knowing and intelligent by requiring that the suspect be fully advised of this constitutional privilege, including the critical advice that whatever he chooses to say may be used as evidence against him.

*Id.* at 574 (holding that a suspect's lack of awareness prior to interrogation of all the crimes about which he would be questioned was not relevant to determining whether he knowingly waived his Fifth Amendment privilege against self-incrimination); *see also United States v. Farley*, 607 F.3d 1294, 1328 (11th Cir. 2010) (a suspect who was advised of his *Miranda* rights which he then waived orally and in writing could not show the waiver was invalid even though police officers deceived him about the real reason they were interviewing him; concluding that the deception was not "constitutionally significant" because, although the information would have been useful and possibly even decisive to the defendant in deciding whether to answer the officers' questions, "the lack of that information did not prevent [the defendant] from understanding the nature of his rights and the legal consequences of waiving them").

In sum, we find no evidence in this record that Defendant was confused about the nature of his right against self-incrimination or of the consequences that would result if he waived the right and spoke with agents. Therefore, we conclude that his waiver was knowingly and intelligently made.

We turn now to the voluntariness prong of the *Moran* analysis. Defendant argues that his waiver was involuntary because the agents' statements had a "coercive effect" on him. [D.E. 87 at 7-8]. He claims that implicit in the statements was the promise that if he did not answer their questions he would go to jail.

This argument fails. Well-established precedent holds that the voluntariness of a waiver of the Fifth Amendment right against self-incrimination "has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." *Connelly*, 479 U.S. at 170 ("*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that."); *see also Moran,* 475 U.S. at 421 ("[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. . . . [T]he record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements.").

Here, Defendant's claim is based on his subjective and vaguely stated belief that the agents' responses had a coercive effect on him. A close reading of the transcript reveals no hint of intimidation, threats, or physical or psychological pressure by the agents as they discussed Defendant's *Miranda* rights with him. Importantly, Defendant has not alleged any such conduct.

Even if telling Defendant that he would go to jail if he did not speak with them was a lie, "[g]enerally, courts have held statements involuntary because of police trickery only when other aggravating circumstances were also present." *Farley*, 607 F.3d at 1328-29 (explaining that misleading a suspect about the existence or strength of evidence against him did not make his statement involuntary, as contrasted with police deception that took the form of a coercive threat or went "directly to the nature of the suspect's rights and the consequences of waiving them," both of which could result in a determination that the statement was involuntary; collecting cases). Given

the complete lack of evidence showing any intimidation or coercive conduct by the agents, we must find that Defendant's waiver of his rights was the result of a free and deliberate choice rather than the product of intimidation or coercion by the agents.

For the reasons discussed above, and based on the totality of the circumstances that are presented by this record, we conclude that Defendant's post-arrest statements were the product of a knowing, voluntary, and intelligent waiver of his *Miranda* rights. There is no basis to suppress the statements so we recommend that Defendant's motion to suppress be denied.

### B.   *Evidentiary Hearing*[4]

Defendant requested that we conduct an evidentiary hearing on the issue of the voluntariness of his waiver. A hearing is not warranted in this case because Defendant "has not proffered any facts contrary to or in addition to [the record as it now stands] which, if proven, would indicate the confession was involuntary." *United States v. Davidson*, 768 F.2d 1266, 1272 (11th Cir. 1985).

In *Davidson*, the court held that a district court had erred when it refused to suppress an allegedly involuntary confession by the appellant without first holding an evidentiary hearing on the issue of voluntariness. Relying on *Jackson v. Denno*, 378 U.S. 368, 376 (1964), in which the Supreme Court held that an accused is deprived of due process if his conviction rests wholly or partially upon an involuntary confession, the Eleventh Circuit explained that

---

[4] Defendant failed to explain why we should hold an evidentiary hearing, and the government failed to respond to the issue.

> a defendant has a constitutional right to a fair hearing and an independent and reliable determination of the voluntariness of a confession before the confession is allowed to be heard by the guilt determining jury. Such a *Jackson v. Denno* hearing is constitutionally mandated for a defendant who timely urges that his confession is inadmissible because not voluntarily given. The voluntariness hearing "must afford the defendant an opportunity to testify regarding the inculpatory statement out of the jury's presence without prejudice to his right not to take the stand in his defense." Finally, a judge's conclusion that the confession is voluntary "must appear from the record with unmistakeable clarity."

*Davidson*, 768 F.2d at 1269-70 (internal citations omitted).

The proper remedy for the erroneous failure to hold an evidentiary hearing is remand for a post-trial hearing on the issue of voluntariness. *Id.* at 1270 (if the confession is deemed voluntary, the conviction stands; if not, a new trial without the confession may be held). The court made clear, however, that such a remedy is available only if an appellant "can show 'that his version of events, if true, would require the conclusion that his confession was involuntary;' i.e., he must allege *facts* which would, if proven true, indicate the involuntariness of his confession." *Id.* (emphasis in original).

Thus, *Davidson* refused to remand the appellant's post-arrest, post-*Miranda* statements for an evidentiary hearing because, even if the "facts" proffered by the appellant were proven to be true, they would not make his confession involuntary. *Id.* at 1271 (the appellant claimed that his confession resulted from conversations with DEA agents about his potential cooperation and the potential disposition of his case, which was confirmed at trial by a DEA agent; because it was well-established that law enforcement statements to a suspect about cooperation and possible disposition were insufficient inducement to render a subsequent confession involuntary, the appellate

court refused to remand for an evidentiary hearing on voluntariness: "appellant has not proffered any facts contrary to or in addition to those alleged by the DEA agents which, if proven, would indicate his confession was involuntary.").

In our case, the record – which consists in relevant part of Defendant's interrogation, his signed waiver form, and an audio recording of his waiver of *Miranda* rights in 2009 (none of which Defendant objected to) – is more than sufficient for us to make an independent and reliable determination of the voluntariness of Defendant's post-arrest statements. Defendant has not proffered a single fact regarding any aspect of his interrogation or overall encounter with law enforcement that, if proven true, would indicate that his statements were involuntary. He therefore is not entitled to an evidentiary hearing on the issue of voluntariness. *See United States v. Scheigert*, 809 F.2d 1532, 1533 (11th Cir. 1987) (holding that the defendant was not entitled to an evidentiary hearing at all, where his challenge to the voluntariness of the confession depended solely on his alleged drug addiction and alcoholism and did not implicate police coercion in any way; given the *Connelly* decision requiring coercive police activity as a necessary predicate to a finding that a confession was not voluntary, "in the absence of coercive police activity, the mental defect and substance dependency of which [the defendant] complains cannot render his confession involuntary."); *see also United States v. Kale*, No. 10-20410-CR, 2011 WL 4408802, at *2 (S.D. Fla. Sept. 22, 2011) (denying the defendant's request for an evidentiary hearing based on an alleged Sixth Amendment violation because the defendant's "conjecture and lack of evidence fail to create any issues of fact that would necessitate an evidentiary hearing."). We deny Defendant's request for an evidentiary hearing.

## III.     CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge does hereby **RECOMMEND** that Defendant Carlington Nevardo Lewis' Motion to Suppress Statement [**D.E. 87**] be **DENIED**.

The undersigned **ORDERS** that Defendant's Request for Evidentiary Hearing [**D.E. 87**] is **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 4th day of October, 2012.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge