UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20745-CR-UNGARO

UNITED STATES OF AMERICA

v.

CARLINGTON LEWIS,

    Defendant.
_____/

ORDER ON MOTION TO SUPPRESS

THIS CAUSE is before the Court on Defendant Carlington Lewis's Motion to Suppress Statements. (D.E. 87.)

THE COURT has reviewed the motion and the pertinent portions of the record and is otherwise fully advised of the premises.

Lewis moves the Court to suppress post-arrest statements that he made to the police during a custodial interrogation on January 24, 2012. The Government concedes that Lewis made the statements during a custodial interrogation, but argues that the police complied with the warning requirements of *Miranda v. Arizona*, 384 U.S. 436 (1966), and that Lewis knowingly and voluntarily waived his *Miranda* rights before making the statements he now seeks to suppress.

This motion was referred to Magistrate Judge Edwin G. Torres, who issued a report recommending that the motion be denied without an evidentiary hearing. (D.E. 115.) In making his recommendation, Judge Torres considered the motion, the response, and the following Government exhibits:  a transcript of the January 24,

2012 interrogation, a copy of the "Advice of Rights and Waiver" form signed by Lewis, and an audio recording of a police interview of Lewis conducted as part of a separate and unrelated investigation on January 9, 2009. Lewis filed objections to Judge Torres's report requesting the Court reject the recommendation and grant his motion. (D.E. 124.) The Court reviews *de novo*. In addition to the materials reviewed by Judge Torres, the Court has reviewed and considered the video recording of the January 24, 2012, interrogation that is the subject of the instant motion.[1]

    Lewis's objections renew his request for an evidentiary hearing. Although the Court has not heard live testimony on this matter, the Court has received and considered, without objection, evidence consisting of a series of Government exhibits, including a transcript and video recording of Lewis's interrogation. *See United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."). Lewis has not objected to the Government exhibits and has not sought to contradict or supplement any of the facts contained therein. Nor has the Government sought to supplement the facts in the record through the presentation of testimony. The parties do not dispute the facts in the record, but rather dispute the legal significance of those facts. Because the only purpose of an evidentiary hearing is to resolve disputed issues over material facts, and because

---

[1]This video was not made available to Judge Torres. It was noticed as Exhibit D (D.E. 126) and hand-delivered to Chambers. It will be filed with the Clerk of Court.

there is no such dispute in this case, the taking of testimony is unnecessary and Defendant's request for further hearing is denied. *See United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) (holding that district court is obliged to hold suppression hearing only to extent that there are disputed issues over material facts); *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (holding that district court did not abuse its discretion to refuse evidentiary hearing on suppression motion where defendant failed to raise disputed material issue of fact); *United States v. Mejia*, 953 F.2d 461 (9th Cir. 1991) (noting that suppression hearing unnecessary where parties dispute legal significance of undisputed facts).

## I. The Interrogation

On January 24, 2012, police arrested Lewis pursuant to a federal warrant and criminal complaint charging Lewis with conspiring to kill and attempting to kill a confidential informant to prevent the informant's testimony at trial. Special Agent Ribas from the Bureau of Alcohol, Tobacco, Firearms, and Explosives and Detective Horn from the Miami Gardens Police Department interrogated Lewis regarding these charges. Before they began questioning Lewis concerning the offense, Agent Ribas ("JR") and Detective Horn ("TH") engaged in the following conversation with Lewis ("CL"), regarding his *Miranda* rights.

> JR: Okay. Before we can start talking to you, you have certain rights afforded to you, and these are the rights. I'm going to read them to you. You said you can read and write, right?
>
> CL: Yes.
>
> JR: Okay. You can read it out yourself. It's up to you. Pretty much you

have your basic rights. You want to read them or you want me read it to you? Okay.

CL: You.

JR: All right. You have the right to remain silent, okay. Anything you say can be used against you in court. You have the right to talk to a lawyer before me asking you any questions (unintelligible). If you cannot afford a lawyer, one will be appointed for you if you wish before any question begins. If you decide to answer any questions now without a lawyer present, you will have the right to stop at any time. Do you understand that?

CL: Yes.

JR: Okay. Just go ahead and initial next to each one of these. Okay? This is very important, okay? This is a waiver. I read the statement of my rights or it has been read to me, as we discussed. I understand these rights and at this time I am willing to answer questions without a lawyer present. No promise or threats have been made to me and no pressures or force of any kind has been used against me. You understand? Are you willing to talk to us?

CL: You said a lawyer will be appointed for me or I have to pay for a lawyer?

JR: The constitution affords you to have an attorney present. It could be now or later or whatever is going on, but I cannot talk to you about your case until you sign this form.

JR: It's up to you whatever you want to talk about.

CL: You got a lawyer present?

JR: No.

TH: No, we don't have a lawyer. You've been arrested before? You know people who've been arrested, right? Basically you either -- you talk to us now without a lawyer, or you go to jail and you deal with it on your own. This is your one opportunity.

JR: To talk to us. After that –

> TH: It's on you. It's your decision. We're not forcing anything.
>
> JR: We're not forcing you. We just can't talk to you. These are the rights afforded to you.
>
> TH: We can't get you a lawyer present now basically.
>
> CL: I don't even know what's going on, man.
>
> JR: Just print your name right here for me. All right, Carlington. I know you by the name -- I know you by the name of Nev, all right? That's why I asked you before if you have any other names. So am I safe to assume that you are Nev or no?
>
> CL: My name is Carlington Nevardo Lewis.

[D.E. 103-2 at 5-6].

In addition to the transcript of this interrogation and the other materials that were considered by Judge Torres, the Government has provided and the Court has considered a video recording of the January 24, 2012, interrogation. The video shows that Lewis signed the waiver at the end of this quoted exchange, after he states, "I don't even know what's going on man." The interrogation then proceeds.

## II.  The *Miranda* Framework

To protect the Fifth Amendment's privilege against self-incrimination from deteriorating to "but a form of words in the hands of government officials," *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (internal quotations omitted), the Supreme Court, in *Miranda*, held that in a criminal trial, the prosecution may not use statements derived from a custodial interrogation of the defendant unless the statements were voluntarily made after the defendant was warned of the following rights:

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 479. These are now commonly referred to as the *Miranda* rights.

In *Moran v. Burbine*, 475 U.S. 412 (1986), the Supreme Court explained that a court must make two distinct findings in order to conclude that a defendant's statement was made after a knowing and voluntarily waiver of the *Miranda* rights. First, the decision to relinquish the rights and make a statement must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. at 421. Second, the decision must have been made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. In sum, the *Miranda* waiver must be both voluntary and knowing.

When the prosecution seeks to admit a defendant's inculpatory statement at trial, as here, the prosecution must prove by a preponderance of the evidence that in making the statement, the defendant knowingly and voluntarily waived his *Miranda* rights. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421. This requires the

prosecution to show that the *Miranda* warning was given to the defendant, that the defendant understood his *Miranda* rights, and that the defendant then made an uncoerced statement. *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2261 (2010).

The burden the Government must meet to demonstrate that a defendant understood the *Miranda* rights is not high–it is by a preponderance of the evidence. *Lego*, 404 U.S. at 489. The police need not use any particular language, provided they reasonably convey to the suspect his or her rights as required by *Miranda*. *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989). In the vast majority of cases, courts will infer that the defendant understood his or her rights from the fact that the police read the defendant the *Miranda* rights litany and the defendant signed a *Miranda* waiver. *See Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004) ("[G]iving the warnings and getting a waiver has generally produced a virtual ticket of admissibility . . . ."), *citing Berkemer v. McCarty*, 468 U.S. 420, 433 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.").

But "mere recitation of the litany" will not suffice in every case. *Seibert*, 542 U.S. at 611; *see also Hart v. Attorney Gen. of the State of Fla.*, 323 F.3d 884, 893 (11th Cir. 2003) ("Although a signed *Miranda* wavier form is 'usually strong proof' that a suspect voluntarily waived his rights, it is not conclusive on this issue."). And only by "effective and express explanation" of the *Miranda* rights can there be

assurance that the defendant was truly in a position to exercise them. *Miranda*, 384 U.S. at 473.

### III. A. Discussion–A Free and Deliberate Choice

The first inquiry under *Moran* is whether Lewis's statement was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. The Supreme Court made clear in *Colorado v. Connelly*, 479 U.S. 157 (1986), that the purpose of the Fifth Amendment privilege against self-incrimination is to protect individuals from official coercion, and therefore the "voluntariness" of a waiver of that privilege depends not on free choice in the abstract, but on the absence of police overreaching. *Id.* at 169-70. For that reason, in *Connelly*, the Supreme Court found a suspect's *Miranda* waiver to be voluntary in spite of evidence that the suspect's confession was not the result of a free choice, but the result of a mental illness that compelled him to confess. *Id.* at 170-71. The Court emphasized that the Fifth Amendment privilege is not concerned with extraneous forces, such as mental illness, that compel a suspect to confess, but only with pressure that emanates from official sources. *Id.*

Judge Torres found, and this Court agrees, that there is no evidence that the police used any intimidation tactics, threats, or physical or psychological pressure in order to compel Lewis to make a statement. The police did not act intentionally to trick or confuse Lewis, and there is nothing in the record to suggest that the

police acted intentionally to coerce Lewis to waive his *Miranda* rights. Therefore the Court concurs with Judge Torres that the first prong of *Moran* is satisfied and Lewis's statement was the product of a free and deliberate choice rather than any official coercion.

### III. B. Discussion–A Full Awareness

*Moran's* second inquiry asks whether Lewis waived his *Miranda* rights with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. Like the first inquiry, the "full awareness" requirement aims to distinguish between statements that are the product of a free choice and those that are compelled by official coercion. This is because the *Miranda* framework presumes that custodial interrogations are inherently coercive. *Id.* at 455-56 ("[T]he very fact of custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals."). To dispel this inherent pressure, the rights afforded by the Fifth Amendment must be explained to the suspect in an effective and express manner. *Id.* at 473.

Once a suspect understands the rights afforded to him or her, the *Miranda* framework presumes a subsequent waiver to be knowing. For this reason, once understanding is established, it is the suspect's responsibility to clearly invoke any right he or she wishes to assert. *See Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260 (2010) (placing onus on suspect to invoke right to silence by holding that police may

continue questioning until suspect unambiguously states he or she wants to remain silent); *Davis v. United States*, 512 U.S. 452 (1994) (holding that police have no duty to clarify equivocal requests for counsel and may continue questioning until suspect clearly requests counsel). But first the prosecution must show that the suspect understood his *Miranda* rights. *Berghuis*, 130 S. Ct. at 2261. This is a threshold requirement, the bulwark against the inherently coercive nature of custodial interrogations. In this case, this requirement is not met because the Government has not shown that Lewis understood his right to appointed counsel.

The Government sets out three facts to supports its argument that Lewis understood his *Miranda* rights. First, the police advised Lewis of his *Miranda* rights by reading to him the traditional *Miranda* litany. Second, Lewis signed a rights waiver form, indicating that he understood his rights and waived them. Finally, Lewis was interrogated in 2009 in connection with an unrelated case, and therefore was already familiar with his *Miranda* rights at the time of the 2012 interrogation.

As previously noted, a signed rights waiver form is highly relevant and strong proof that a suspect voluntarily and knowingly waived his rights. *See Seibert*, 542 U.S. at 609 (noting that valid rights waiver is typically a ticket of admissibility). Courts typically infer from such a form that the a suspect actually understood the *Miranda* rights. A signed waiver form is not conclusive, however, and there are instances when the totality of the circumstances surrounding the

interrogation indicate that despite signing the form, the suspect did not understand the *Miranda* rights. The Eleventh Circuit's decision in *Hart v. Attorney Gen. Of the State of Fla.*, 323 F.3d 884 (11th Cir. 2003) is instructive on this point.

In *Hart*, a detective "went to great lengths to apprise Hart of his rights" by carefully explaining each *Miranda* warning to him. *Id.* at 893. After hearing this explanation, Hart signed a rights waiver form to indicate that he understood each of the rights and that he was willing to speak to the detective without a lawyer. *Id.* Hart then asked to speak with a different detective, Detective Schuster, with whom he was previously familiar. *Id.* at 894. When Schuster arrived, Hart asked her what were the pros and cons of hiring a lawyer. *Id.* The Eleventh Circuit observed: "Although asking for the pros and cons of hiring a lawyer is not an unequivocal request for counsel, it does indicate that Hart did not fully understand his right to counsel and was asking for clarification of that right." *Id.*

The Eleventh Circuit then found problematic two statements that Schuster made in response to Hart's inquiry. First, Schuster told Hart that one of the cons of asking for a lawyer was "I'm going to want to ask you questions and he's going to tell you you can't answer me." *Id.* By doing so, Schuster contradicted the purpose of the *Miranda* warnings, which is to protect a suspect's privilege against self-incrimination. *Id.* Second, Schuster told Hart that "honesty wouldn't hurt him." *Id.* This statement was contrary to the *Miranda* warning that anything Hart said could be used against him in court. *Id.* Given the totality of circumstances surrounding

the interrogation, the Eleventh Circuit found that, "[Hart] did not truly understand the nature of his right against self-incrimination or the consequences that would result from waiving it." *Id.* at 495.

The Eleventh Circuit came to a similar conclusion in *United States v. Lall*, 607 F.3d 1277 (11th Cir. 2010). In that case, a detective gave defendant Lall the *Miranda* warnings on the front lawn of his house. *Id.* 1283. Then, as the detective and Lall entered the bedroom, the detective told Lall that he was not going to pursue charges against him. *Id.* Lall then made several incriminating statements to the detective, which were subsequently used against him at trial. *Id.* at 1281. Citing *Hart*, the Eleventh Circuit held that "this representation contradicted the *Miranda* warnings previously given," and compelled a conclusion that "Lall 'did not truly understand the nature of his right against self-incrimination or the consequences that would result from waiving it.'" *Id.* (*quoting Hart*, 323 F.3d at 895).

In this case, at the outset of the interrogation, the police recited to Lewis the *Miranda* litany, and Lewis promptly signed a rights-waiver form indicating that he understood and waived his *Miranda* rights. But despite acknowledging that he understood the litany and despite signing the form, Lewis, at the very next opportunity to respond, asked the police, "You said a lawyer will be appointed for me or I have to pay for a lawyer?" This request for clarification, like the one examined in *Hart*, indicates that Lewis did not fully understand the right to counsel, specifically the right to appointed counsel.

Rather than answer Lewis's question, the officers next made a series of irrelevant statements regarding other aspects of the right to counsel. Agent Ribas stated, "The Constitution affords you to have an attorney present. It could be now or later or whatever is going on, but I cannot talk to you about your case until you sign this form." This statement merely reiterated that Lewis had the right to an attorney, but did not communicate to Lewis that he had the right to have appointed counsel present during questioning.

The officers then told Lewis that no lawyer was present at the police station, and that Lewis could choose to talk without a lawyer, or go to jail and "deal with it" on his own. Again, while these statements are not necessarily incorrect, they are irrelevant to Lewis's inquiry regarding appointment of counsel. Lewis easily could have understood the officer's unresponsive answers to mean that no lawyer could be appointed prior to questioning. As was the case in *Hart* and *Lall*, despite the officers' adherence to the relatively orthodox *Miranda* procedure, the totality of the circumstances suggests that Lewis did not actually understand all of the essential *Miranda* rights, in particular the right to appointed counsel. Because Lewis clearly expressed confusion on this point, and because there is no evidence that indicates that he ever came to an understanding of that right, the Court concludes that Lewis did not have a full awareness of the right to counsel when he waived it.

In so concluding, the Court rejects Judge Torres's finding that Lewis waived his *Miranda* rights knowingly, with full awareness of their nature. Judge Torres's recommendation rested on several findings with which this Court disagrees. First,

Judge Torres concluded that Lewis's question–"You said a lawyer will be appointed to me or I have to pay for a lawyer?"–evinced not confusion, but awareness of the right to counsel, and noted:  "The query concerned the mechanics of hiring and paying for a lawyer, not whether he had a right to a lawyer in the first place." (D.E. 115 at 8.)

A general awareness of the right to counsel does not satisfy *Miranda's* requirements. And the right of an indigent to be appointed counsel cannot be relegated to the category "mechanical." To an indigent defendant, there are no mechanics to be worked out; the indigent defendant understands that either he or she will have access to an appointed a lawyer or go without for lack of resources.

> The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent–the person most often subjected to interrogation–the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, only by *effective and express explanation* to the indigent of this right can there be assurance that he was truly in a position to exercise it.

*Miranda*, 384 U.S. at 473 (emphasis added).  Therefore, a defendant must be warned " that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id*. at 479.

Lewis's question expressed confusion regarding a core *Miranda* right. This distinguishes the instant case from those cited by Judge Torres, in which the police misled suspects regarding facts that were irrelevant to the Fifth Amendment privilege. These cases distinguish between a suspect's awareness of "constitutionally significant information about the nature of the right being waived,

and information that merely affects the wisdom of the decision to waive." *United States v. Farley*, 607 F.3d 1294, 1328 (11th Cir. 2010), *quoting Colorado v. Spring*, 479 U.S. 564 (1987). In both *Farley* and *Spring*, defendants contended that their statements were involuntary because they were made without full awareness of the nature of the charges against them and the subject matter of the interrogation. In both cases, the courts found the statements were made knowingly because they were made with a full understanding of *Miranda's* protections. The subject matter of an interrogation, although relevant to the decision to waive *Miranda* rights and speak, is not relevant to a suspect's understanding of the *Miranda* rights themselves.

In this case, however, Lewis expressed confusion about whether he would have to pay for an attorney in order for an attorney to be present during the interrogation. This is constitutionally significant information. Because Lewis did not understand whether or not he would have to pay for an attorney to be present during questioning, Lewis was not fully aware of all of his *Miranda* rights.

Judge Torres also points out the there was nothing inherently inaccurate or misleading about any of the statements the police made to Lewis. The accuracy of the officer's statements is relevant to determine whether the warnings, as a whole, reasonably convey to a defendant the *Miranda* rights. *See Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) ("The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*.") (internal quotations

omitted). In *Duckworth*, for example, the Supreme Court considered the accuracy of officers' statements in holding that the following warnings, in their totality, satisfied *Miranda*:

> Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. *You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning.* You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. *We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court.* If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you've talked to a lawyer.

*Id.* at 198 (emphasis in original).

In *Duckworth*, the defense argued that the "if and when you go to court" language was constitutionally defective because it failed to adequately convey that the suspect had a right to appointed counsel during questioning. *Id.* at 200. The Court examined the warnings as a whole and found that they were not unduly confusing, and that they reasonably conveyed to the suspect that he had a right to appointed counsel during questioning. *Id.* at 205. One factor the Court considered was that the warnings were an accurate statement of the procedure for the appointment of counsel. *Id.*

But importantly, the suspect in *Duckworth* never expressed any actual confusion regarding his rights. *Id.* at 198. In *Duckworth*, the Court had to consider whether the language on its own was misleading, such that the Court could not infer that a suspect, upon hearing that language, would be confused about his or

her rights. In this case, Lewis was actually confused about the right to appointed counsel, as evinced by the fact that he asked for clarification from the officers as to that right. Under these circumstances, the relevance of the officers' statements is not whether the statements were accurate, but whether they were responsive to Lewis's inquiry. They are relevant because they show that Lewis never got an answer to his question–would a lawyer be provided or would he have to pay?

Judge Torres also notes that part-way through the interrogation, one of the agents reminded Lewis that a lawyer would be appointed for him. It is true that the officer told Lewis that at some point in the future, he would go before a judge and be appointed a lawyer. The officer stated:

> Think about this, bro. Think about this. Because this has to get resolved. This is going to go through a process. You're going to go before a judge. The judge is going to read those charges to you again. You're going to get appointed a lawyer. The lawyer is going to see the evidence that we have.
> . . .

(D.E. 103-2 at 28). This statement, however, does not convey to Lewis that he is entitled to appointed counsel during questioning. The most it does is inform him that he will be appointed a lawyer at arraignment or some other future court date. While this is not inaccurate, it is not an explanation of the right to counsel sufficient to allow the Court to infer that Lewis understood the right to appointment of counsel during questioning.

Finally, the Government relies on the fact that Lewis was interviewed by police in 2009, in connection with an unrelated criminal matter, to show that at the time of the 2012 interrogation, Lewis was already familiar with *Miranda*

protections. The Government provided the Court with an audio recording of the 2009 interview, in which a police officer questions Lewis about a domestic disturbance that occurred between Lewis and two other people in November 2008. At the outset of the interview, the officer advised Lewis of his *Miranda* rights and Lewis indicated that he understood those rights and waived them. It is unknown to this Court whether the statements Lewis made during this interview were ever challenged in a subsequent court proceeding, or admitted at a subsequent criminal trial.

Although prior arrests and familiarity with the criminal justice system can support an inference that a suspect understood the *Miranda* warnings, it cannot render the warnings unnecessary, nor dispose of the requirement that the defendant actually understand the warnings at the time that they are waived. *Compare United States v. Vinton*, 631 F.3d 476, 482 (8th Cir. 2011) ("A history of interaction with the criminal justice system supports an inference that an interviewee is familiar with his constitutional rights and that his statements to the police are voluntary."), *and United States v. Gaddy*, 894 F.2d 1307, 1312 (11th Cir. 1990) (finding *Miranda* waiver knowing and voluntary in part because defendant was previously "convicted, for armed robbery and aggravated assault, and is, therefore, no novice to law enforcement procedures."), *with United States v. Espinosa-Orlando*, 704 F.2d 507, 514 (11th Cir. 1983) (holding defendant's previous arrest "insufficient to establish that he was aware of all his [*Miranda*] rights" because "it must under *Miranda* be presumed that he was unaware of his right to

appointed counsel."). In *Espinosa-Orlando*, the Eleventh Circuit found that because the police failed to warn the defendant of his right to have appointed counsel during questioning, no amount of circumstantial evidence, such as a prior arrest, could overcome this deficiency to show that the defendant was aware of the right to appointed counsel.

In the instant case, the circumstances of the 2012 interrogation show that Lewis did not understand the nature of the right to appointed counsel. Lewis expressed confusion regarding the right to appointed counsel by asking the officers to clarify whether he could be appointed a lawyer. The officers never clarified this right for Lewis, compelling a conclusion that Lewis did not truly understand the nature of the right. This evidence is not outweighed by the circumstances of the 2009 interrogation, at least insofar as those circumstances are developed in the record in this case. The fact that Lewis apparently chose to waive his *Miranda* rights in 2009, three years prior to making the statements currently at issue, for whatever reason, while being interviewed in connection with a minor charge, says little, if anything, about Lewis's understanding of his *Miranda* rights in 2012. The fact of the earlier waiver is largely outweighed by the fact that Lewis displayed actual confusion regarding the right to appointed counsel during the 2012 interrogation.

## IV. Conclusion

Upon *de novo* review and in consideration of the totality of the circumstances, the prosecution fails to demonstrate by a preponderance of the evidence that Lewis

was fully aware of the right to appointed counsel at the time he waived his *Miranda* rights. Accordingly, it is

ORDERED AND ADJUDGED that the Report of the Magistrate Judge (D.E. 115) is REJECTED and Defendant Carlington Lewis's Motion to Suppress (D.E. 87) is GRANTED and the request for hearing is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 13th day of December, 2012.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record